**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MARYLAND**
**CIVIL DIVISION**

| | |
|---|---|
| **The Estate of Donta Walker, by and through its Personal Representative, Tayona Lena Victoria Walker,**<br>1001 Pennsylvania Ave Apt 304<br>Baltimore, Maryland, 21201<br><br>    **Plaintiff,**<br>*v.*<br><br>**State of Maryland**<br>*Serve on: Dereck E. Davis, State Treasurer*<br>80 Calvert Street<br>Annapolis, Maryland 21401<br><br>*Anthony G. Brown,* Attorney General<br>St. Paul Plaza - 19th Floor<br>200 St. Paul Place<br>Baltimore, Maryland 21202<br><br>**and**<br><br>**Maryland Department of Public Safety and Correctional Services**<br>*Serve on Carolyn J. Scruggs, Secretary*<br>6852 4th Street.<br>Sykesville, Maryland 21784<br><br>**and**<br><br>**CHS TX, Inc.**<br>**d/b/a YesCare**<br>205 Powell Place, Suite 104<br>Brentwood, TN 37027<br>*Serve on: The Corporation Trust Incorporated*<br>2405 York Road, Suite 201<br>Lutherville-Timonium, MD 21093<br><br>**and**<br><br>**YesCare MD, LLC**<br>**d/b/a YesCare**<br>7600 Kindler Overlook Drive<br>Laurel, MD 20723<br>*Serve on: Bethel Asres* | Civil Action No. 25-2310 |

1

7600 Kindler Overlook Drive
Laurel, MD 20723

**and**

**Hamid Kiabayan, MD,**
Maryland Correctional Institution - Jessup Facility
*Individually and in their official capacity*
7803 House of Correction Rd
Jessup, MD 20794

**and**

**Correct Rx Pharmacy Services, Inc.**
1352 Charwood Road, Suite C
Hanover, MD 21076
Serve on: Resident Agent, Ellen H. Yankellow
1352 Charwood Road, Suite C
Hanover, MD 21076

**and**

**Robert Dean,** Warden
Maryland Correctional Institution - Jessup Facility
*Individually and in their official capacity*
7803 House of Correction Rd
Jessup, MD 20794

**and**

**Geneva Holland,** Assistant Warden
Maryland Correctional Institution - Jessup Facility
*Individually and in their official capacity*
7803 House of Correction Rd
Jessup, MD 20794

**and**

**Keith D. Dickens,** Chief of Security
Maryland  Correctional Institution - Jessup Facility
*Individually and in their official capacity*
7803 House of Correction Rd
Jessup, MD 20794

**and**

**Sharon Baucom,** Chief Medical Director

Maryland Correctional  Institution - Jessup Facility
*Individually and in their official capacity*
7803 House of Correction Rd
Jessup, MD 20794

**and**

**Joseph Ezeh,** Director of Inmate healthcare
administration
Maryland Correctional Institution - Jessup Facility
*Individually and in their official capacity*
7803 House of Correction Rd
Jessup, MD 20794

**and**

**Adaora Odunze,** Director of Nursing Services,
Maryland Correctional Institution - Jessup Facility
*Individually and in their official capacity*
7803 House of Correction Rd
Jessup, MD 20794

**and**

**Olayinka Ukim,** Associate Chief of Medicine,
Maryland Correctional Institution - Jessup Facility
*Individually and in their official capacity*
7803 House of Correction Rd
Jessup, MD 20794

**and**

**Kasahun Temesgen,** Director of Inmate Health
Care, Maryland Department of Public Safety and
Correctional Services
*Individually and in their official capacity*
7803 House of Correction Rd
Jessup, MD 20794

**and**

**Nicole Hargraves,** Health Services Administrator,
Maryland Correctional Institution - Jessup Facility
*Individually and in their official capacity*
7803 House of Correction Rd
Jessup, MD 20794

**and**

**Sabastine Offorji,** Nurse,
Maryland Correctional Institution - Jessup Facility
*Individually and in their official capacity*
7803 House of Correction Rd
Jessup, MD 20794

**and**

**Wasiu Irekoya,** Correctional Officer II,
Maryland Correctional Institution - Jessup Facility
*Individually and in their official capacity*
7803 House of Correction Rd
Jessup, MD 20794

**and**

**Waheed Jimoh,** Correctional Officer II,
Maryland Correctional Institution - Jessup Facility
*Individually and in their official capacity*
7803 House of Correction Rd
Jessup, MD 20794

**and**

**Jaques Kemegne,** Correctional Officer II, Maryland
Correctional Institution - Jessup Facility
*Individually and in their official capacity*
7803 House of Correction Rd
Jessup, MD 20794

**and**

**Kevin Hight,** Correctional Officer,
Maryland Correctional Institution - Jessup Facility
*Individually and in their official capacity*
7803 House of Correction Rd
Jessup, MD 20794

**Defendants.**

## COMPLAINT AND JURY DEMAND

Plaintiff, the Estate of Donta Walker, by and through its Personal Representative, Tayona

Lena Victoria Walker (*hereinafter*, "Plaintiff"), by and through undersigned counsel, files this suit

against Defendants State of Maryland, Maryland Department of Public Safety and Correctional Services, CHS TX, Inc., d/b/a YesCare, YesCare MD, LLC, d/b/a YesCare, Hamid Kiabayan, Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Correct Rx Pharmacy Services, Inc., Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight and Sabastine Offorji, RN, (*collectively* "Defendants") and states the following in support thereof:

## **THE PARTIES**

1.      Plaintiff, the Estate of Donta Walker, brings this action by and through its duly appointed Personal Representative, Tayona Lena Victoria Walker, pursuant to applicable Maryland law. At all times relevant to this Complaint, Donta Walker ("Mr. Walker" or the "Decedent") was a prison inmate of the State of Maryland in the custody of the Maryland Department of Public Safety and Correctional Services at the Maryland Correctional Institution - Jessup, located at 7803 House of Correction Rd Jessup, MD 20794 (the "Jessup Facility").

2.      Defendant State of Maryland is a sovereign governmental entity that is responsible for the operation and oversight of correctional facilities within its jurisdiction. The State of Maryland is named as a substitute party defendant as required by Maryland Annotated Code, *State Government Article Section 12-101. Et seq.*

3.      Defendant Maryland Department of Public Safety and Correctional Services ("Maryland Correctional Services" or "DPSCS") is an agency of the Maryland State Government and operates state correctional facilities throughout Maryland, including the Jessup Facility and its infirmary, where Mr. Walker should have received adequate medical care in October, 2022. DPSCS was, at all times relevant, responsible for the housing, safety, and constitutional rights of incarcerated individuals within its facilities, including Mr. Walker. Additionally, DPSCS was

tasked with the supervision, command, and oversight of staff members working at the facility, as well as ensuring the provision of adequate medical care, either directly or through contracted healthcare providers.

4.    Upon information and belief, Defendant CHS TX, Inc., d/b/a YesCare (Defendant "YesCare TX"), a healthcare provider contracted by the Defendant DPSCS and, at all relevant times, responsible for managing the infirmary at the Jessup Facility on or about October 18, 2022, is an entity incorporated under the laws of Texas, with its principal office located in Brentwood, Tennessee. At all times relevant hereto, Defendant CHS TX, Inc. owned Defendant YesCare MD, LLC.

5.    Upon information and belief, Defendant YesCare MD, LLC, d/b/a YesCare (Defendant "YesCare MD"), is a domestic corporation with its principal office in the State of Maryland. Defendant YesCare MD was contracted to provide healthcare services to the inmates at the Jessup Facility.

6.    Upon information and belief, Defendant Hamid Kiabayan, M.D. ("Defendant Kiabayan"), was, at all times relevant, a physician at the Maryland Correctional Institution - Jessup Facility and provided prescriptions to Mr. Walker. Defendant Kiabayan, at all times relevant herein, was employed by YesCare TX and/or YesCare MD.

7.    Upon information and belief, Defendant Robert Dean (Defendant "Dean") was, at all times relevant, the Warden of Maryland Correctional Institution - Jessup Facility. Defendant Dean, at all times relevant, was employed by the State of Maryland as the Warden of the Jessup Facility.

8.    Upon information and belief, Defendant Geneva Holland ("Defendant Holland") was, at all times relevant, the Assistant Warden of the Maryland Correctional Institution - Jessup

Facility. Defendant Holland, at all times relevant herein, was employed by the State of Maryland as the Assistant Warden of the Jessup Facility.

9.    Upon information and belief, Defendant Keith D. Dickens (Defendant "Dickens") was, at all times relevant, Chief of Security of Maryland Correctional Institution - Jessup Facility. Defendant Dickens, at all times relevant herein, was employed by the State of Maryland as the Chief of Security of the Jessup Facility.

10.    Upon information and belief, Defendant Sharon Baucom (Defendant "Baucom"), was, at all times relevant, Chief Medical Director of Maryland Correctional Institution - Jessup Facility. Defendant Sharon Baucom, at all times relevant herein, was employed by the State of Maryland as the Chief Medical Director of the Jessup Facility.

11.    Upon information and belief, Defendant Joseph Ezeh (Defendant "Ezeh") was, at all times relevant, Director of Inmate healthcare administration of Maryland Correctional Institution - Jessup Facility. Defendant Ezeh, at all times relevant herein, was employed by the State of Maryland as the Director of Inmate healthcare administration of the Jessup Facility.

12.    Upon information and belief Defendant Olayinka Ukim (Defendant "Ukim"), was, at all times relevant, Associate Chief of Medicine (ACOM) of Maryland Correctional Institution - Jessup Facility. Defendant Ukim, at all times relevant herein, was employed by the State of Maryland as ACOM at the Jessup Facility.

13.    Upon information and belief, Defendant Dr. Kasahun Temesgen, MD, FACP (Defendant "Temesgen"), was, at all times relevant, the Regional Medical Director - Jessup Region. Defendant Temesgen, at all times relevant herein, was employed by the State of Maryland as the Regional Medical Director - Jessup Region.

14.     Upon information and belief, Defendant Nicole Hargraves (Defendant "Hargraves"), was, at all times relevant, Health Services Administrator of Maryland Correctional Institution - Jessup Facility. Defendant Hargraves, at all times relevant herein, was employed by YesCare TX and/or YesCare MD.

15.     Upon information and belief, Defendant Correct Rx Pharmacy Services, Inc. (Defendant "Correct Rx"), was at all times relevant a healthcare provider contracted by the Defendant DPSCS and responsible for supplying medications prescribed to Mr. Walker, with its principal office located in Hanover, Maryland.

16.     Upon information and belief, Defendant Wasiu Irekoya (Defendant "Irekoya") was, at all times relevant, a Correctional Officer II assigned to the Maryland Correctional Institution – Jessup. Defendant Irekoya was employed by the State of Maryland and, on the morning of October 18, 2022, personally escorted Mr. Walker to the medical unit and participated in CPR after Mr. Walker collapsed.

17.     Upon information and belief, Defendant Waheed Jimoh ("Defendant Jimoh"), was, at all times relevant, a Correctional Officer II assigned to the Maryland Correctional Institution – Jessup. Defendant Jimoh was employed by the State of Maryland and, on the morning of October 18, 2022, personally participated in CPR after Mr. Walker collapsed.

18.     Upon information and belief, Defendant Jaques Kemegne (Defendant "Kemegne"), was, at all times relevant, a Correctional Officer II assigned to the Maryland Correctional Institution – Jessup. Defendant Kemegne was employed by the State of Maryland and, on the morning of October 18, 2022, personally participated in CPR after Mr. Walker collapsed.

19.     Upon information and belief, Defendant Kevin Hight (hereinafter "Defendant Hight") was, at all times relevant, a Correctional Officer assigned to the Maryland Correctional

Institution – Jessup. Defendant Hight was employed by the State of Maryland and was responsible for authoring the Serious Incident Report (SIR) related to Mr. Walker's death.

20.    Upon information and belief, Defendant Sabastine Offorji, RN (Defendant "Offorji"), was, at all times relevant, a nurse practitioner assigned to the infirmary at the Jessup Facility where Mr. Walker was being held as a prisoner of the State of Maryland and Department of Public Safety and Correctional Services. Defendant Offorji treated Mr. Walker during his final medical presentation, failed to document vital signs, prematurely discharged him prior to his collapse, and later performed CPR on Mr. Walker following the medical emergency. Defendant Offorji, at all times relevant herein, was employed by YesCare TX and/or YesCare MD.

21.    Upon information and belief, Defendants were responsible for the operation of the infirmary at the Jessup Facility in a safe and proficient manner, with a duty to exercise reasonable care to protect the inmates of that institution, and provide proper and timely medical care, including Mr. Walker, and each Defendant is sued individually and in his/her official capacity. At all times mentioned in this Complaint, each Defendant acted under the color of State Law.

## JURISDICTION AND VENUE

22.    This matter arises from a personal injury claim and authorized by 42 U.S.C. 1983 and 1988 to redress the deprivation, under color of State Law, of rights secured by the Constitution of the United States and the Maryland Declaration of Rights, brought against the agents, staff, and employees of Defendant State of Maryland and Defendant Department of Public Safety and Correctional Services, for claims of negligence and failure to provide adequate medical care, resulting in the wrongful death of Donta Walker on October 18, 2022 at the Jessup Facility in Anne Arundel County, Maryland. Defendants CHS TX, Inc, YesCare MD, LLC, Hamid Kiabayan, Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze,

Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Correct Rx Pharmacy Services, Inc., Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight and Sabastine Offorji, RN, violated Mr. Walker's rights under the Eighth Amendment of the United State Constitution and the Maryland Declaration of Rights.

23.    Venue in this action properly lies in this court pursuant to 28 U.S.C. 1391 (b)(2) because the acts and omissions complained of occurred in the State of Maryland.

24.    Subject matter jurisdiction of this Court is involved pursuant to 28 U.S.C. § 1331 and 1343(a)(3), as this action arises under the Constitution and laws of the United States, and supplemental jurisdiction is proper under 28 U.S.C. § 1367(a).

25.    Personal jurisdiction and venue of this Court is invoked as Defendants caused tortious injury in the State of Maryland.

26.    Pursuant to Maryland Annotated Code, State Government Article Section 12-101 through 12-109, "Maryland Tort Claims Act", written notice to the Treasurer is not required as a condition precedent to the instant action. Section 12-106(c)(2) provides that the notice requirement set forth in "Subsection (b)(1) and (2) of [the] section does not apply if, within 1 year after the injury to the person or property that is the basis of the claim, the State has actual or constructive notice of: (i) the claimant's injuries; or (ii) the defect or circumstances giving rise to the claimant's injury."

27.    The State of Maryland was on notice of Mr. Walker's claim and further had notice of the occurrence at the Jessup Facility in which Mr. Walker was housed. Further, the matter was under investigation by the State of Maryland through the coordination between the Department of Public Safety and Correctional Services and the Maryland State Treasurer's Office. Additionally,

on January 30, 2025, Plaintiff filed a Motion for Leave to Perpetuate Testimony and Evidence pursuant to Md. Rule 2-404 in the Circuit Court for Anne Arundel County, Maryland.

28.     To the extent 42 U.S.C. § 1997e(a) applies, administrative remedies were not available to Mr. Walker prior to his death due to the emergent and fatal nature of his medical condition, institutional delays, and the failure of medical personnel to appropriately respond to his urgent needs. In *Green v. Dean*, No. 1:23-cv-01141-ELH, 2024 U.S. Dist. LEXIS 155169 (D. Md. Aug. 22, 2024), the United States District Court for the District of Maryland dismissed the Prison Litigation Reform Act exhaustion requirement where a prisoner at the Maryland Correctional Institution – Jessup died amid an unresolved medical emergency, holding that administrative remedies were not "available" under *Ross v. Blake*. Mr. Walker's circumstances are materially similar. He submitted repeated sick call requests and directly sought emergency treatment from the Jessup infirmary for respiratory distress. Despite these urgent efforts, medical staff failed to provide appropriate care and returned him to general housing, where he collapsed and died shortly thereafter. Because the institutional medical and grievance systems were incapable of delivering timely relief under these emergent circumstances, the administrative remedy process was functionally useless and thus unavailable as a matter of law. See also *Moore v. Bennette*, 517 F.3d 717 at 725 (4th Cir. 2008).

29.     The Plaintiff hereby demands a jury trial on the allegations below.

## FACTS COMMON TO ALL COUNTS

30.     At all relevant times, before and at the time of his death, Mr. Walker was incarcerated at the Jessup Facility, under the control of Defendant DPSCS. Upon information and belief, the infirmary at the Jessup Facility was managed and operated by Defendants CHS TX, Inc.

d/b/a YesCare and YesCare MD, LLC (*collectively*, "YesCare"), which were responsible for providing medical care to incarcerated individuals.

31.    Upon information and belief, Mr. Walker began complaining of difficulty breathing. Recognizing the symptoms as an asthma attack, Mr. Walker sought medical assistance three separate times from the infirmary operated by YesCare. Despite Mr. Walker's repeated pleas for treatment and urgent medical intervention, medical staff failed to provide appropriate medical care or treatment and instead dismissed Mr. Walker's distress.

32.    Mr. Walker explicitly begged medical staff to transfer him to a hospital for appropriate treatment, yet YesCare's medical staff refused his requests and denied him access to critical and life-saving medical care.

33.    As a direct and proximate result of Defendants' deliberate indifference, negligence, and failure to provide timely and necessary medical care, Mr. Walker suffered fatal respiratory distress and passed away on October 18, 2022, within the custody and control of Defendant DPSCS at the Jessup Facility.

34.    Upon information and belief, YesCare and its agents, employees, and/or contractors, including the medical staff assigned to the infirmary at the Jessup Facility, had a legal duty to provide proper and timely medical care to incarcerated individuals, including Mr. Walker. Despite this duty, Defendants negligently, recklessly, and unlawfully failed to provide the necessary treatment, which directly contributed to Mr. Walker's wrongful and preventable death.

35.    Upon information and belief, Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, and Adaora Odunze, in their respective official and individual capacities, were responsible for the administrative management and oversight of the Jessup Facility. Their failure to ensure compliance with medical care policies and protocols, as

well as their failure to intervene in Mr. Walker's medical crisis, further contributed to Mr. Walker's untimely and tragic death.

36.     Mr. Walker's death was entirely preventable and was caused by Defendants' systemic failure to provide constitutionally adequate medical care, as well as their gross negligence and deliberate indifference to Mr. Walker's serious medical needs, including their failure to timely diagnose, treat, and provide necessary emergency intervention for Mr. Walker's worsening respiratory distress.

37.     Upon information and belief, DPSCS personnel and contracted providers failed to document vital signs, monitor respiratory function, or conduct peak flow measurements during Mr. Walker's acute asthma exacerbation on October 18, 2022. Despite known risks and patient requests, he was returned to his cell, where he collapsed and died less than 30 minutes later.

38.     Upon information and belief, YesCare was contractually obligated to maintain chronic care management for individuals with asthma, including medication monitoring, refill access, and emergency escalation protocols. Internal death review documents reveal repeated failures in all three areas.

39.     Upon information and belief, Mr. Walker had not received a refill of his controller inhaler since June 29, 2022. YesCare staff failed to follow up on sick call slips submitted in July and September 2022, leading to an avoidable medication lapse.

40.     Upon information and belief, Warden Dean and other high-level supervisory officials were notified immediately after Mr. Walker's death, suggesting their awareness of serious breakdowns in institutional protocol.

41.     Upon information and belief, the Death Review Summary identify institutional concerns including the absence of respiratory assessments, documentation gaps, and improper return of the patient to housing without proper follow-up.

42.     Upon information and belief, the peer-reviewed findings fault nursing leadership for lack of vital sign documentation and the failure to activate emergency protocols including potential Narcan administration.

43.     Upon information and belief, despite Mr. Walker's direct request for Albuterol on the night of his death, YesCare failed to escalate care or ensure continuous monitoring, instead allowing Mr. Walker to return to housing where he went into respiratory arrest.

44.     Upon information and belief, Mr. Walker's death was reviewed internally and cited with multiple violations of basic correctional healthcare standards, including the failure to assess respiratory status, incomplete triage documentation, and an unjustified return to general population during active respiratory distress.

45.     As a result of Defendants' wrongful actions and inactions, Mr. Walker endured unnecessary pain, suffering, and ultimately, an avoidable death, depriving his family of their loved one.

## COUNT I – 42 U.S.C. 1983 (Wrongful Death)
**(Plaintiff v. Defendants CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Correct Rx Pharmacy Services, Inc., Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight and Sabastine Offorji, RN)**

46.     Plaintiff realleges and incorporates by reference all of the facts and allegations of the paragraphs above as if fully set forth herein and further alleges:

47.     In committing the acts and omissions complained of herein, Defendants CHS TX, Inc. d/b/a YesCare and YesCare MD, LLC (*collectively*, "YesCare"), Hamid Kiabayan, Robert

Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Correct Rx Pharmacy Services, Inc., Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight and Sabastine Offorji, RN acted under the color of state law to deprive Mr. Walker of his constitutionally protected rights under the Eighth Amendment to the Constitution of the United States, and of his civil rights afforded by statute, viz., 42 U.S.C. § 1983.

48.    These violations include, but are not limited to, the failure to provide reasonable and necessary medical care, deliberate indifference to Mr. Walker's serious medical needs, and the failure to protect Mr. Walker from preventable harm, resulting in his wrongful and preventable death while in custody at Jessup Facility on October 18, 2022.

49.    The Defendants were deliberately indifferent and grossly negligent in failing to fulfill their non-delegable responsibility and obligation to protect Mr. Walker and provide proper and timely medical care while he was in their care, control, and custody as an inmate at the Jessup Facility.

50.    The Defendants knew of the substantial and excessive risk of serious harm to incarcerated individuals due to the denial of essential medical care, including the failure to promptly treat life-threatening medical conditions such as Mr. Walker's respiratory distress and asthma attack. Defendants were aware that delayed or denied medical intervention could lead to severe injury or death and that prompt hospitalization was necessary for individuals experiencing respiratory failure.

51.    The Defendants knew of, yet disregarded, the excessive risk to Mr. Walker's health and safety arising from their failure to provide timely and adequate medical care. Defendants were aware of previous instances where inmates at Jessup Facility suffered harm due to medical neglect,

yet failed to implement policies or corrective actions to prevent future occurrences. Defendants willfully and wantonly neglected their duty of care, deliberately ignored Mr. Walker's repeated pleas for emergency medical intervention, and failed to transport him to a hospital despite his worsening condition. As a result of Defendants' reckless disregard for Mr. Walker's health, he suffered preventable respiratory failure and death on October 18, 2022.

52.    The Defendants' responsibilities included, but were not limited to:

a.    Ensuring the safety and security of inmates housed at Jessup Facility;

b.    Providing adequate medical care to incarcerated individuals in their custody;

c.    Supervising and overseeing medical staff responsible for inmate healthcare;

d.    Implementing and following proper medical protocols for treating individuals experiencing medical distress, including respiratory distress;

e.    Ensuring that inmates experiencing medical emergencies received prompt and appropriate medical attention, including transfer to a hospital when necessary;

f.    Correcting unconstitutional conduct of medical personnel, correctional officers, and staff working at Jessup Facility;

g.    Adequately staffing the facility with trained medical professionals capable of addressing medical crises;

h.    Adequately supervising the infirmary and medical staff to prevent negligence and medical neglect;

i.    Assessing the severity of an inmate's medical condition in a timely and competent manner; and

j.    Providing immediate, adequate, and appropriate medical treatment to inmates suffering from serious medical conditions, including acute asthma exacerbations.

53.     As a result of the unlawful and deliberate actions and inactions by Defendants, Mr. Walker suffered the following:

      a.   Violation of his constitutional rights under the Eighth Amendment by exhibiting deliberate indifference to his serious medical needs, thereby subjecting him to cruel and unusual punishment while incarcerated;

      b.   Permanent injuries leading to death, depriving Mr. Walker of the ability to recover;

      c.   Loss of enjoyment of life due to Defendants' failure to provide basic medical care; and

      d.   Severe physical pain and suffering, culminating in wrongful death due to the denial of necessary emergency medical care.

54.     Upon information and belief, Defendants Baucom, Ezeh, Ukim, and Temesgen, as senior medical officers and administrators, were responsible for overseeing medical protocols and chronic care management systems at the Jessup Facility, and failed to ensure that Mr. Walker received essential asthma treatment, medication refills, or emergency escalation consistent with known medical need. Defendant Kiabayan, as a physician at the Jessup Facility, provided prescriptions to Mr. Walker yet failed to ensure continuity of necessary medications and treatment essential for Mr. Walker's known asthma condition. Defendant Hargraves, as Health Services Administrator, was responsible for staffing, triage procedures, and infirmary operations, and failed to intervene despite knowledge of lapses in care. Defendant Offorji, the nurse practitioner who treated Mr. Walker during his final presentation, failed to assess respiratory status, document vital signs, or refer Mr. Walker for emergency care, instead discharging him to general housing shortly before his collapse. Defendant Correct Rx failed to ensure medication continuity and refill compliance, resulting in the lapse of controller inhalers known to be medically necessary.

Defendants Dean, Holland, and Dickens, as Warden, Assistant Warden, and Chief of Security, respectively, were responsible for institutional oversight and security coordination, and were aware of systemic failures in medical care yet failed to ensure timely response or review. Defendant Hight authored the Serious Incident Report and had access to information evidencing prior medical complaints and institutional breakdowns. Defendants Irekoya, Jimoh, and Kemegne, who personally participated in CPR, and had custody interaction with Mr. Walker that morning, failed to summon timely medical intervention despite visible signs of distress. Each of the above-named Defendants acted individually and collectively with deliberate indifference, or with reckless disregard for Mr. Walker's serious medical needs, and their inaction directly contributed to the violation of his constitutional rights

55.    Defendants' actions and inactions were committed under the color of state law, thereby triggering liability under 42 U.S.C. § 1983 for the violation of Mr. Walker's constitutional rights, including deliberate indifference to his serious medical needs under the Eighth Amendment.

56.    For this specific count, Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, and Kevin Hight are sued in their **individual capacities**, and **not as State employees in their official capacities**, thereby excluding the applicability of Eleventh Amendment immunity under the United States Constitution. As such, these Defendants are subject to liability under 42 U.S.C. § 1983 for actions taken under color of state law that deprived Mr. Walker of rights secured by the Constitution and laws of the United States.

57.    Under 42 U.S.C. § 1983 Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD,

FACP, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, and Kevin Hight can be held liable for their own personal wrongdoing and/or for supervisory actions that themselves violate the United States Constitution. Plaintiff is **not asserting *respondeat superior*** liability but rather supervisory liability and the above Defendants' personal participation in the constitutional violation; the extent of their personal involvement is to be confirmed during discovery.

58.     Upon information and belief, Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen, and Nicole Hargraves incurred supervisory liability under 42 U.S.C. § 1983 by having actual or constructive knowledge that their subordinates were engaged in conduct posing a pervasive and unreasonable risk of constitutional injury to Mr. Walker and other inmates suffering from serious medical conditions, including asthma. Despite this knowledge, these Defendants failed to take corrective action, allowing systemic failures in medical care to persist at the Jessup Facility. Their response was so inadequate as to show deliberate indifference or tacit authorization of policies and practices that resulted in the failure to provide timely medical intervention, denial of necessary asthma medication, and the refusal to transfer Mr. Walker to a hospital in time to prevent his death. There exists a direct causal link between these Defendants' inaction and Mr. Walker's constitutional injury, as their failure to train, supervise, or correct known deficiencies in medical care contributed to the deliberate indifference that resulted in Mr. Walker's suffering and death.

59.     Defendants CHS TX, Inc. and YesCare MD, LLC, and their actual and/or apparent agents, servants and employees, including but not limited to Defendant Kiabayan, Defendant Offorji and Defendant Hargraves, by virtue of their contractual obligations to perform core governmental functions within a state-run correctional facility, acted under color of state law and are liable under the Constitution and laws of the United States.

60.     As a direct and proximate result of the breach of the duties committed by Defendants, Plaintiff, pursuant to Maryland Courts and Judicial Proceedings Annotated Code 3-904, sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, services, as well as past and future loss of earnings, economic capacity, and enjoyment of life and all damages awardable pursuant to common law and state law arising out of the death of Mr. Walker.

61.     All of Mr. Walker's injuries, damages, and losses were caused solely by the above Defendants' negligence and failure to exercise due care, with no contributory negligence on the part of the Mr. Walker.

**WHEREFORE**, Plaintiff demands judgment against Defendants CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Correct Rx Pharmacy Services, Inc., Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight and Sabastine Offorji, RN, jointly and severally, in a sum that exceeds Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs, and all other relief deemed necessary and just under the circumstances.

## COUNT II – 42 U.S.C. 1983 (Survival Action)
**(Plaintiff v. CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Correct Rx Pharmacy Services, Inc., Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight and Sabastine Offorji, RN)**

62.     Plaintiff realleges and incorporates by reference all of the facts and allegations of the paragraphs above as if fully set forth herein and further alleges:

63.     In committing the acts and omissions complained of herein, Defendants CHS TX, Inc. d/b/a YesCare and YesCare MD, LLC (*collectively*, "YesCare"), Hamid Kiabayan, Robert

Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Correct Rx Pharmacy Services, Inc., Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight and Sabastine Offorji, RN acted under the color of state law to deprive Mr. Walker of his constitutionally protected rights under the Eighth Amendment to the Constitution of the United States, and of his civil rights afforded by statute, viz., 42 U.S.C. § 1983.

64.    These violations include, but are not limited to, the failure to provide reasonable and necessary medical care, deliberate indifference to Mr. Walker's serious medical needs, and the failure to protect Mr. Walker from preventable harm, resulting in his wrongful and preventable death while in custody at Jessup Facility on October 18, 2022.

65.    The Defendants were deliberately indifferent and grossly negligent in failing to fulfill their non-delegable responsibility and obligation to protect Mr. Walker and provide proper and timely medical care while he was in their care, control, and custody as an inmate at the Jessup Facility.

66.    The Defendants knew of the substantial and excessive risk of serious harm to incarcerated individuals due to the denial of essential medical care, including the failure to promptly treat life-threatening medical conditions such as Mr. Walker's respiratory distress and asthma attack. Defendants were aware that delayed or denied medical intervention could lead to severe injury or death and that prompt hospitalization was necessary for individuals experiencing respiratory failure.

67.    The Defendants knew of, yet disregarded, the excessive risk to Mr. Walker's health and safety arising from their failure to provide timely and adequate medical care. Defendants were aware of previous instances where inmates at Jessup Facility suffered harm due to medical neglect,

yet failed to implement policies or corrective actions to prevent future occurrences. Defendants willfully and wantonly neglected their duty of care, deliberately ignored Mr. Walker's repeated pleas for emergency medical intervention, and failed to transport him to a hospital despite his worsening condition. As a result of Defendants' reckless disregard for Mr. Walker's health, he suffered preventable respiratory failure and death on October 18, 2022.

68.    The Defendants' responsibilities included, but were not limited to:

a.    Ensuring the safety and security of inmates housed at Jessup Facility;

b.    Providing adequate medical care to incarcerated individuals in their custody;

c.    Supervising and overseeing medical staff responsible for inmate healthcare;

d.    Implementing and following proper medical protocols for treating individuals experiencing medical distress, including respiratory distress;

e.    Ensuring that inmates experiencing medical emergencies received prompt and appropriate medical attention, including transfer to a hospital when necessary;

f.    Correcting unconstitutional conduct of medical personnel, correctional officers, and staff working at Jessup Facility;

g.    Adequately staffing the facility with trained medical professionals capable of addressing medical crises;

h.    Adequately supervising the infirmary and medical staff to prevent negligence and medical neglect;

i.    Assessing the severity of an inmate's medical condition in a timely and competent manner; and

j.    Providing immediate, adequate, and appropriate medical treatment to inmates suffering from serious medical conditions, including acute asthma exacerbations.

69.    As a result of the unlawful and deliberate actions and inactions by Defendants, Mr. Walker suffered the following:

a.  Violation of his constitutional rights under the Eighth Amendment by exhibiting deliberate indifference to his serious medical needs, thereby subjecting him to cruel and unusual punishment while incarcerated;

b.  Permanent injuries leading to death, depriving Mr. Walker of the ability to recover;

c.  Loss of enjoyment of life due to Defendants' failure to provide basic medical care; and

d.  Severe physical pain and suffering, culminating in wrongful death due to the denial of necessary emergency medical care.

70.    Upon information and belief, Defendants Baucom, Ezeh, Ukim, and Temesgen, as senior medical officers and administrators, were responsible for overseeing medical protocols and chronic care management systems at the Jessup Facility, and failed to ensure that Mr. Walker received essential asthma treatment, medication refills, or emergency escalation consistent with known medical need. Defendant Kiabayan, as a physician at the Jessup Facility, provided prescriptions to Mr. Walker yet failed to ensure continuity of necessary medications and treatment essential for Mr. Walker's known asthma condition. Defendant Hargraves, as Health Services Administrator, was responsible for staffing, triage procedures, and infirmary operations, and failed to intervene despite knowledge of lapses in care. Defendant Offorji, the nurse practitioner who treated Mr. Walker during his final presentation, failed to assess respiratory status, document vital signs, or refer Mr. Walker for emergency care, instead discharging him to general housing shortly before his collapse. Defendant Correct Rx, failed to ensure medication continuity and refill compliance, resulting in, among other consequences, the lapse of controller inhalers known to be

medically necessary. Defendants Dean, Holland, and Dickens, as Warden, Assistant Warden, and Chief of Security, respectively, were responsible for institutional oversight and security coordination, and were aware of systemic failures in medical care yet failed to ensure timely response or review. Defendant Hight authored the Serious Incident Report and had access to information evidencing prior medical complaints and institutional breakdowns. Defendants Irekoya, Jimoh, and Kemegne, who participated in CPR, and had custody interaction with Mr. Walker that morning, failed to summon timely medical intervention despite visible signs of distress. Each of the above-named Defendants acted individually and collectively with deliberate indifference, or with reckless disregard for Mr. Walker's serious medical needs, and their inaction directly contributed to the violation of his constitutional rights.

71.    Defendants' actions and inactions were committed under the color of state law, thereby triggering liability under 42 U.S.C. § 1983 for the violation of Mr. Walker's constitutional rights, including deliberate indifference to his serious medical needs under the Eighth Amendment.

72.    For this specific count, Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, and Kevin Hight are sued in their **individual capacities**, and **not as State employees in their official capacities**, thereby excluding the applicability of Eleventh Amendment immunity under the United States Constitution. As such, these Defendants are subject to liability under 42 U.S.C. § 1983 for actions taken under color of state law that deprived Mr. Walker of rights secured by the Constitution and laws of the United States.

73.    Under 42 U.S.C. § 1983 Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD,

FACP, Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, and Kevin Hight can be held liable for their own personal wrongdoing and/or for supervisory actions that themselves violate the United States Constitution. Plaintiff is **not asserting *respondeat superior*** liability but rather supervisory liability and the above Defendants' personal participation in the constitutional violation; the extent of their personal involvement is to be confirmed during discovery.

74.     Upon information and belief, Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen, and Nicole Hargraves incurred supervisory liability under 42 U.S.C. § 1983 by having actual or constructive knowledge that their subordinates were engaged in conduct posing a pervasive and unreasonable risk of constitutional injury to Mr. Walker and other inmates suffering from serious medical conditions, including asthma. Despite this knowledge, these Defendants failed to take corrective action, allowing systemic failures in medical care to persist at the Jessup Facility. Their response was so inadequate as to show deliberate indifference or tacit authorization of policies and practices that resulted in the failure to provide timely medical intervention, denial of necessary asthma medication, and the refusal to transfer Mr. Walker to a hospital in time to prevent his death. There exists a direct causal link between these Defendants' inaction and Mr. Walker's constitutional injury, as their failure to train, supervise, or correct known deficiencies in medical care contributed to the deliberate indifference that resulted in Mr. Walker's suffering and death.

75.     Defendants CHS TX, Inc. and YesCare MD, LLC, and their actual and/or apparent agents, servants and employees, including but not limited to Defendant Offorji and Defendant Hargraves, by virtue of their contractual obligations to perform core governmental functions within a state-run correctional facility, acted under color of state law and are liable under the Constitution and laws of the United States.

76.     As a direct and proximate result of the breach of the duties committed by Defendants, Plaintiff, pursuant to Maryland Courts and Judicial Proceedings Annotated Code 3-904, sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, services, as well as past and future loss of earnings, economic capacity, and enjoyment of life and all damages awardable pursuant to common law and state law arising out of the death of Mr. Walker.

77.     All of Mr. Walker's injuries, damages, and losses were caused solely by the above Defendants' negligence and failure to exercise due care, with no contributory negligence on the part of the Mr. Walker.

78.     **WHEREFORE**, Plaintiff demands judgment against Defendants CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Correct Rx Pharmacy Services, Inc., Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight and Sabastine Offorji, RN, jointly and severally, in a sum that exceeds Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs, and all other relief deemed necessary and just under the circumstances.

## COUNT III – 42 U.S.C. § 12132 Violation of the Americans with Disabilities Act (ADA)
### (Plaintiff v. Defendants Department of Public Safety and Correctional Services, CHS TX, Inc., and YesCare MD, LLC)

79.     Plaintiff realleges and incorporates by reference all of the facts and allegations of the paragraphs above as if fully set forth herein and further alleges:

80.     Plaintiff brings this action for violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, against Defendants Maryland Department of Public Safety and Correctional Services, CHS TX, Inc., and YesCare MD, LLC. The acts and omissions

giving rise to Plaintiff's ADA claim also constitute violations of the Eight Amendment to the United States Constitution, including but not limited to deliberate indifference to Mr. Walker's serious medical needs in violation of his due process rights as a prison inmate. Accordingly, pursuant to *United States v. Georgia*, 546 U.S. 151 (2006), sovereign immunity is abrogated, and Defendants are subject to suit for monetary damages under Title II.

81.    Asthma is a qualifying disability under the Americans with Disabilities Act (ADA) because it substantially limits a major life activity—breathing (*42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(j)(1)(i)*). The ADA Amendments Act of 2008 (ADAAA) explicitly recognizes that episodic conditions, such as asthma, qualify as disabilities when they substantially limit a major life activity when active (*29 C.F.R. § 1630.2(j)(1)(viii)*).

82.    Defendant DPSCS, as operators of the Jessup Facility, are public entities under Title II of the ADA and are required to provide reasonable accommodations for individuals with disabilities, including incarcerated individuals with asthma (*42 U.S.C. § 12131(1)(B)*).

83.    Defendants CHS TX, Inc., and YesCare MD, LLC (*collectively*, "YesCare"), provided medical care at Jessup Facility under contract with DPSCS and had a duty to provide reasonable accommodations under the ADA and Maryland law. Defendant YesCare, by operating the Jessup infirmary under contract with the State of Maryland, functioned as an instrumentality of a public entity under 42 U.S.C. § 12131(1)(B). To the extent Defendant YesCare is deemed subject to Title II, it likewise denied Mr. Walker access to life-sustaining treatment in violation of the ADA.

84.    The above Defendants knew or should have known that Mr. Walker had a disability requiring reasonable accommodations, including timely medical intervention, access to inhalers, emergency care, and hospitalization in the event of an asthma exacerbation.

85.     Despite this knowledge, Defendants failed to provide reasonable accommodations, including, but not limited to:

a.      Failing to provide Mr. Walker access to necessary asthma medication (e.g., inhalers, nebulizers, or corticosteroids);

b.      Failing to respond appropriately to Mr. Walker's worsening respiratory distress, which constituted an urgent medical condition;

c.      Failing to transfer Mr. Walker to a hospital in a timely manner, despite clear indications of a life-threatening asthma exacerbation;

d.      Failing to implement or enforce policies to ensure proper treatment for inmates with asthma, despite knowing the risks of untreated asthma attacks; and

e.      Failing to train correctional and medical staff on how to recognize and respond to respiratory distress in individuals with asthma.

86.     As a direct and proximate result of Defendants' discriminatory failure to provide reasonable accommodations, Mr. Walker suffered severe respiratory distress, preventable suffering, and ultimately death.

87.     The failure to provide timely refills of both Albuterol and Alvesco inhalers, along with a lack of follow-up after submitted sick calls, constitutes a failure to reasonably accommodate Mr. Walker's known disability. The prison's sick call system did not ensure adherence to asthma protocols, and no affirmative steps were taken to confirm medication availability or patient understanding, in violation of 42 U.S.C. §12132 and 29 U.S.C. §794.

88.     Moreover, under 28 C.F.R. § 35.130(b)(7), a public entity is required to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to avoid discrimination on the basis of disability. Defendants' failure to modify their

28

practices—such as denying timely access to rescue inhalers, failing to provide continuous monitoring for asthmatic inmates in distress, and refusing to implement hospital referral protocols—constitutes an actionable violation independent of their denial of medical care. These failures reflect a systemic refusal to make reasonable accommodations for individuals with asthma, in direct contravention of their obligations under Title II of the ADA.

        **WHEREFORE**, Plaintiff demands judgment against Defendants Department of Public Safety and Correctional Services, CHS TX, Inc., and YesCare MD, LLC, jointly and severally, for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs, and such further relief as this Court deems necessary and just.

<u>**COUNT IV – 29 U.S.C. § 794 Discrimination Against Mr. Walker Because of Disability in Violation of Section 504 of the Rehabilitation Act**</u>
**(Plaintiff v. Defendant Department of Public Safety and Correctional Services, CHS TX, Inc., and YesCare MD, LLC)**

        89.    Plaintiff realleges and incorporates by reference all of the facts and allegations of the paragraphs above as if fully set forth herein and further alleges:

        90.    Upon information and belief, Defendant Maryland Department of Public Safety and Correctional Services and its contracted provider Defendant YesCare received, at all time relevant, federal financial assistance and are therefore subject to Section 504 of the Rehabilitation Act.

        91.    When state agencies knowingly accept federal funds that come with explicit conditions, they effectively waive their Eleventh Amendment immunity and can be sued for monetary damages under Section 504 of the Rehabilitation Act. See *Spencer v. Earley*, 278 F. App'x 254, 259 n.4 (4th Cir. 2008). Accordingly, Plaintiff's claims under § 504 of the Rehabilitation Act against DPSCS—a state agency—are not barred by the Eleventh Amendment.

        92.    Under 29 U.S.C. § 794(b), Section 504 applies to "all of the operations" of a department or agency receiving federal funding. Implementing regulations, including 28 C.F.R. §

42.503, prohibit recipients from denying a qualified handicapped person "an equal opportunity to achieve the same benefits" as others or from providing "services in a setting that is not as integrated."

93.      Mr. Walker suffered from Asthma. Asthma is a qualifying disability under the Americans with Disabilities Act (ADA) because it substantially limits a major life activity—breathing (*42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(j)(1)(i)*). The ADA Amendments Act of 2008 (ADAAA) explicitly recognizes that episodic conditions, such as asthma, qualify as disabilities when they substantially limit a major life activity when active (*29 C.F.R. § 1630.2(j)(1)(viii)*).

94.      Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance […]" 29 U.S.C. § 794(a).

95.      Mr. Walker was otherwise qualified to participate in the services or programs of the Jessup Facility, including but not limited to healthcare and chronic care management services provided to incarcerated individuals.

96.      Upon information and belief, Mr. Walker was denied necessary medical treatment, reasonable accommodations, and access to benefits solely by reason of his disability—specifically, his medically diagnosed asthma and associated respiratory distress. The above Defendants failed to recognize the seriousness of his condition, treating his acute asthma attack as insufficiently urgent to warrant hospital transfer or appropriate medical intervention. This disregard constituted unlawful discrimination under Section 504 of the Rehabilitation Act by denying Mr. Walker equal access to life-sustaining care available to non-disabled individuals in similar circumstances.

97.     As a qualified individual with a disability, Mr. Walker was entitled to reasonable accommodations and access to medical services while in state custody. Defendants DPSCS and YesCare, recipients of federal financial assistance, failed to provide necessary accommodations or timely medical intervention in response to Mr. Walker's respiratory distress, effectively excluding him from participation in or benefits of medical care provided in the Jessup Facility solely by reason of his disability.

98.     Defendant DPSCS failed to ensure Mr. Walker had access to adequate asthma care, emergency medical response, and accommodations necessary to manage his disability safely within a correctional environment. These failures effectively barred him from the program's benefits due to his disability.

99.     Defendant YesCare, through its operation of the prison infirmary under contract with Defendant DPSCS, and as a recipient of federal financial assistance for the provision of healthcare services, was subject to Section 504 of the Rehabilitation Act. Defendant YesCare's agents and employees, including but not limited to Defendant Offorji, denied Mr. Walker necessary respiratory treatment, medications, and timely referral to higher-level medical care, all of which were required to accommodate his disability. These omissions constituted discrimination on the basis of disability and directly contributed to Mr. Walker's preventable death.

100.    As a direct and proximate result of the above Defendants' violations of Section 504, Mr. Walker suffered severe pain, emotional distress, and ultimately wrongful death. His exclusion from necessary medical services by reason of his asthma constituted unlawful discrimination.

101.    **WHEREFORE,** Plaintiff demands judgment against Defendants Department of Public Safety and Correctional Services, CHS TX, Inc., and YesCare MD, LLC, jointly and

severally, for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs, and such further relief as this Court deems necessary and just.

### COUNT V – Maryland State Declaration of Rights (Wrongful Death)
### (Plaintiff v. all Defendants)

102.    Plaintiff realleges and incorporates by reference all of the facts and allegations of the paragraphs above as if fully set forth herein and further alleges:

103.    The actions of agents and/or employees of Defendant State of Maryland through Defendant DPSCS, all of which were committed under the color of their authority as correctional officers, medical and administrative staff at the Jessup Facility, violated the Maryland Declaration of Rights, including but not limited to the right to be free from cruel and unusual punishment, the right to security of person, and the right to receive proper and timely medical care while in state custody.

104.    The Defendants engaged in unconstitutional customs, policies and practices that violated Decedent's rights under the Maryland Declaration of Rights.

105.    As a direct and proximate result of the acts and omissions of Defendants, Mr. Walker was deprived of his rights and immunities secured to him under the Maryland Declaration of Rights, including but not limited to, article 16, and article 25; his right not to be deprived of life or liberty without due process of law, proper and timely medical care and not to be subjected to cruel and unusual punishment while incarcerated.

106.    The Defendants' duties included, but are not limited to:

    a.    Providing timely and adequate medical care for serious medical conditions while the Decedent was in state custody;

    b.    Ensuring the safety and security of incarcerated individuals under their supervision;

32

c.     Recognizing and responding appropriately to emergent medical symptoms, including respiratory distress and asthma exacerbations;

d.     Communicating relevant medical information among correctional and medical staff to prevent lapses in treatment;

e.     Housing the Decedent in a medically appropriate unit when clinical instability was evident;

f.     Upholding Mr. Walker's constitutional rights under Article 25 of the Maryland Declaration of Rights, including his right to due process and freedom from cruel and unusual punishment.

107.    The Defendants breached their duties in the following ways:

a.     Failing to respond to Mr. Walker's repeated medical complaints and signs of respiratory distress despite known asthma history and visible deterioration;

b.     Returning Mr. Walker to general housing without treatment or monitoring after he explicitly requested emergency care and exhibited symptoms requiring immediate intervention;

c.     Failing to initiate emergency protocols or escalate care to an outside hospital or higher-level infirmary care;

d.     Withholding or failing to provide essential asthma medications such as Albuterol, despite Mr. Walker's clinical need and multiple prior prescriptions;

e.     Failing to ensure coordination between medical staff and correctional staff to monitor an inmate in acute distress;

f.     Acting with reckless disregard and deliberate indifference to Mr. Walker's serious medical condition, by delaying or denying necessary treatment;

g.    Violating Mr. Walker's constitutional right to humane conditions of confinement and freedom from cruel and unusual punishment under Article 25 of the Maryland Declaration of Rights;

h.    Causing Mr. Walker to endure conscious pain and suffering, fear, and emotional distress in the hours before his preventable death.

108.    Upon information and belief, Defendants Baucom, Ezeh, Ukim, and Temesgen, as senior medical officers and administrators, were responsible for overseeing medical protocols and chronic care management systems at the Jessup Facility, and failed to ensure that Mr. Walker received essential asthma treatment, medication refills, or emergency escalation consistent with known medical need. Defendant Kiabayan, as a physician at the Jessup Facility, provided prescriptions to Mr. Walker yet failed to ensure continuity of necessary medications and treatment essential for Mr. Walker's known asthma condition. Defendant Hargraves, as Health Services Administrator, was responsible for staffing, triage procedures, and infirmary operations, and failed to intervene despite knowledge of lapses in care. Defendant Offorji, the nurse practitioner who treated Mr. Walker during his final presentation, failed to assess respiratory status, document vital signs, or refer Mr. Walker for emergency care, instead discharging him to general housing shortly before his collapse. Defendant Correct Rx failed to ensure medication continuity and refill compliance, resulting in, among other consequences, the lapse of controller inhalers known to be medically necessary. Defendants Dean, Holland, and Dickens, as Warden, Assistant Warden, and Chief of Security, respectively, were responsible for institutional oversight and security coordination, and were aware of systemic failures in medical care yet failed to ensure timely response or review. Defendant Hight authored the Serious Incident Report and had access to information evidencing prior medical complaints and institutional breakdowns. Defendants

Irekoya, Jimoh, and Kemegne, who participated in CPR, and had custody interaction with Mr. Walker that morning, failed to summon timely medical intervention despite visible signs of distress. Each of the above-named Defendants acted individually and collectively with deliberate indifference, or with reckless disregard for Mr. Walker's serious medical needs, and their inaction directly contributed to the violation of his constitutional rights under Article 25 of the Maryland Declaration of Rights.

109.    As the employer for Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Correct Rx Pharmacy Services, Inc., Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, and Kevin Hight, who were Defendant State of Maryland and Department of Public Safety and Correctional Services' actual and/or apparent agents, servants, employees, and/or independent contractors acting within the course and scope of their actual and/or apparent agency and/or employment under the doctrine of vicarious liability and/or *respondeat superior*.

110.    Defendants State of Maryland and Department of Public Safety and Correctional Services trained and supervised its employees negligently.

111.    As a direct and proximate result of the actions and omissions, described above, of Defendants State of Maryland, Maryland Department of Public Safety and Correctional Services, CHS TX, Inc., d/b/a YesCare, YesCare MD, LLC, d/b/a YesCare, Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Correct Rx Pharmacy Services, Inc., Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight and Sabastine Offorji, RN, the Decedent was deprived of his liberty and was caused to suffer severe bodily and emotional injuries, and death.

112.    Defendant State of Maryland has waived its sovereign immunity and assumed liability for the actions of its agents, servants and/or employees who were, at all times relevant to this complaint, acting within the scope of their employment with the Defendant at the Jessup Facility. Defendant State of Maryland is accordingly responsible for the action and proximately related damages referenced herein pursuant to Maryland State Tort Claims Act, Maryland Annotated Code, *State Government Article* Section ("MTCA") §§ 12-101, *et seq*.

113.    For this specific count, Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Correct Rx Pharmacy Services, Inc., Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, and Kevin Hight, are sued in both their **individual capacities** and in their **official capacities as State employees**, pursuant to MTCA §§ 12-101 *et seq*.

114.    Additionally, to the extent that these Defendants acted outside the scope of their employment, with gross negligence, or with deliberate disregard for Mr. Walker's serious medical needs, they are liable in their individual capacities for the harm caused. This claim is brought solely under Maryland state law, and therefore, Eleventh Amendment immunity is not applicable in this count.

115.    The actions and omissions described above constitute gross negligence and/or actual malice, including repeated, knowing disregard of Mr. Walker's documented asthma history, visible respiratory distress, explicit requests for emergency treatment, and critical medication being withheld despite known prescriptions. These were not mere lapses in care but conscious, reckless decisions in the face of an obvious medical emergency, amounting to an intentional failure to perform a manifest duty and a reckless disregard of life-threatening consequences.

116.    Defendants State of Maryland and Department of Public Safety and Correctional Services are liable to Mr. Walker's Estate for such damages as might have been recovered by Mr. Walker had he survived his injuries and brought this action including, but not limited to, claims for conscious pain and suffering, deprivation of his rights, medical bills, funeral expenses, emotional distress, fear and all damages awardable pursuant to common law and state law.

117.    Defendants CHS TX, Inc. and YesCare MD, LLC, and their actual and/or apparent agents, servants and employees, including but not limited to Defendant Offorji and Defendant Hargraves, acted under color of state law and in concert with the State of Maryland by providing constitutionally mandated medical care within the State's prison system under a government contract, pursuant to State-established protocols. These Defendants carried out core public safety and health functions on behalf of the State, making them subject to liability under the Maryland Declaration of Rights.

118.    The rights secured under Article 25 of the Maryland Declaration of Rights are independently actionable under Maryland law, and are not limited or barred by the standards of the federal Constitution. Even if the corresponding federal claims were to fail, the Maryland Declaration of Rights permits recovery for grossly negligent or malicious violations of a prison inmate's state constitutional rights. *See DiPino v. Davis*, 354 Md. 18 (1999).

119.    As a direct and proximate result of the negligence committed by the above Defendants, Plaintiff, pursuant to Maryland Courts and Judicial Proceedings Annotated Code 3-904, sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, services, as well as past and future loss of earnings, economic capacity, and enjoyment of life and all damages awardable pursuant to common law and state law arising out of the death of Mr. Walker.

**WHEREFORE**, Plaintiff demands judgment against State of Maryland, Maryland Department of Public Safety and Correctional Services, CHS TX, Inc., d/b/a YesCare, YesCare MD, LLC, d/b/a YesCare, Hamid Kiabayan, Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Correct Rx Pharmacy Services, Inc., Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight and Sabastine Offorji, RN, jointly and severally, for monetary damages in a sum that exceeds Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs, and all other relief deemed necessary and just under the circumstances.

<u>**COUNT VI – Maryland State Declaration of Rights (Survival Action)**</u>
**(Plaintiff v. all Defendants)**

120.    Plaintiff realleges and incorporates by reference all of the facts and allegations of the paragraphs above as if fully set forth herein and further alleges:

121.    The actions of agents and/or employees of Defendant State of Maryland through Defendant DPSCS, all of which were committed under the color of their authority as correctional officers, medical and administrative staff at the Jessup Facility, violated the Maryland Declaration of Rights, including but not limited to the right to be free from cruel and unusual punishment, the right to security of person, and the right to receive proper and timely medical care while in state custody.

122.    The Defendants engaged in unconstitutional customs, policies and practices that violated Decedent's rights under the Maryland Declaration of Rights.

123.    As a direct and proximate result of the acts and omissions of Defendants, Mr. Walker was deprived of his rights and immunities secured to him under the Maryland Declaration of Rights, including but not limited to, article 16, and article 25; his right not to be deprived of life

or liberty without due process of law, proper and timely medical care and not to be subjected to cruel and unusual punishment while incarcerated.

124.    The Defendants' duties included, but are not limited to:

g.    Providing timely and adequate medical care for serious medical conditions while the Decedent was in state custody;

h.    Ensuring the safety and security of incarcerated individuals under their supervision;

i.    Recognizing and responding appropriately to emergent medical symptoms, including respiratory distress and asthma exacerbations;

j.    Communicating relevant medical information among correctional and medical staff to prevent lapses in treatment;

k.    Housing the Decedent in a medically appropriate unit when clinical instability was evident;

l.    Upholding Mr. Walker's constitutional rights under Article 25 of the Maryland Declaration of Rights, including his right to due process and freedom from cruel and unusual punishment.

125.    The Defendants breached their duties in the following ways:

i.    Failing to respond to Mr. Walker's repeated medical complaints and signs of respiratory distress despite known asthma history and visible deterioration;

j.    Returning Mr. Walker to general housing without treatment or monitoring after he explicitly requested emergency care and exhibited symptoms requiring immediate intervention;

k.      Failing to initiate emergency protocols or escalate care to an outside hospital or higher-level infirmary care;

l.      Withholding or failing to provide essential asthma medications such as Albuterol, despite Mr. Walker's clinical need and multiple prior prescriptions;

m.      Failing to ensure coordination between medical staff and correctional staff to monitor an inmate in acute distress;

n.      Acting with reckless disregard and deliberate indifference to Mr. Walker's serious medical condition, by delaying or denying necessary treatment;

o.      Violating Mr. Walker's constitutional right to humane conditions of confinement and freedom from cruel and unusual punishment under Article 25 of the Maryland Declaration of Rights;

p.      Causing Mr. Walker to endure conscious pain and suffering, fear, and emotional distress in the hours before his preventable death.

126.    Upon information and belief, Defendants Baucom, Ezeh, Ukim, and Temesgen, as senior medical officers and administrators, were responsible for overseeing medical protocols and chronic care management systems at the Jessup Facility, and failed to ensure that Mr. Walker received essential asthma treatment, medication refills, or emergency escalation consistent with known medical need. Defendant Kiabayan, as a physician at the Jessup Facility, provided prescriptions to Mr. Walker yet failed to ensure continuity of necessary medications and treatment essential for Mr. Walker's known asthma condition. Defendant Hargraves, as Health Services Administrator, was responsible for staffing, triage procedures, and infirmary operations, and failed to intervene despite knowledge of lapses in care. Defendant Offorji, the nurse practitioner who treated Mr. Walker during his final presentation, failed to assess respiratory status, document vital

signs, or refer Mr. Walker for emergency care, instead discharging him to general housing shortly before his collapse. Defendant Correct Rx failed to ensure medication continuity and refill compliance, resulting in, among other consequences, the lapse of controller inhalers known to be medically necessary. Defendants Dean, Holland, and Dickens, as Warden, Assistant Warden, and Chief of Security, respectively, were responsible for institutional oversight and security coordination, and were aware of systemic failures in medical care yet failed to ensure timely response or review. Defendant Hight authored the Serious Incident Report and had access to information evidencing prior medical complaints and institutional breakdowns. Defendants Irekoya, Jimoh, and Kemegne, who participated in CPR, and had custody interaction with Mr. Walker that morning, failed to summon timely medical intervention despite visible signs of distress. Each of the above-named Defendants acted individually and collectively with deliberate indifference, or with reckless disregard for Mr. Walker's serious medical needs, and their inaction directly contributed to the violation of his constitutional rights under Article 25 of the Maryland Declaration of Rights.

127.    As the employer for Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Correct Rx Pharmacy Services, Inc., Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, and Kevin Hight, who were Defendant State of Maryland and Department of Public Safety and Correctional Services' actual and/or apparent agents, servants, employees, and/or independent contractors acting within the course and scope of their actual and/or apparent agency and/or employment under the doctrine of vicarious liability and/or *respondeat superior*.

128.    Defendants State of Maryland and Department of Public Safety and Correctional Services trained and supervised its employees negligently.

129.    As a direct and proximate result of the actions and omissions, described above, of Defendants State of Maryland, Maryland Department of Public Safety and Correctional Services, CHS TX, Inc., d/b/a YesCare, YesCare MD, LLC, d/b/a YesCare, Hamid Kiabayan, Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Correct Rx Pharmacy Services, Inc., Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight and Sabastine Offorji, RN, the Decedent was deprived of his liberty and was caused to suffer severe bodily and emotional injuries, and death.

130.    Defendant State of Maryland has waived its sovereign immunity and assumed liability for the actions of its agents, servants and/or employees who were, at all times relevant to this complaint, acting within the scope of their employment with the Defendant at the Jessup Facility. Defendant State of Maryland is accordingly responsible for the action and proximately related damages referenced herein pursuant to Maryland State Tort Claims Act, Maryland Annotated Code, *State Government Article* Section ("MTCA") §§ 12-101, *et seq*.

131.    For this specific count, Defendants Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Correct Rx Pharmacy Services, Inc., Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, and Kevin Hight, are sued in both their **individual capacities** and in their **official capacities as State employees**, pursuant to MTCA §§ 12-101 *et seq*.

132.    Additionally, to the extent that these Defendants acted outside the scope of their employment, with gross negligence, or with deliberate disregard for Mr. Walker's serious medical needs, they are liable in their individual capacities for the harm caused. This claim is brought solely

under Maryland state law, and therefore, Eleventh Amendment immunity is not applicable in this count.

133.    The actions and omissions described above constitute gross negligence and/or actual malice, including repeated, knowing disregard of Mr. Walker's documented asthma history, visible respiratory distress, explicit requests for emergency treatment, and critical medication being withheld despite known prescriptions. These were not mere lapses in care but conscious, reckless decisions in the face of an obvious medical emergency, amounting to an intentional failure to perform a manifest duty and a reckless disregard of life-threatening consequences.

134.    Defendants State of Maryland and Department of Public Safety and Correctional Services are liable to Mr. Walker's Estate for such damages as might have been recovered by Mr. Walker had he survived his injuries and brought this action including, but not limited to, claims for conscious pain and suffering, deprivation of his rights, medical bills, funeral expenses, emotional distress, fear and all damages awardable pursuant to common law and state law.

135.    Defendants CHS TX, Inc. and YesCare MD, LLC, and their actual and/or apparent agents, servants and employees, including but not limited to Defendant Offorji and Defendant Hargraves, acted under color of state law and in concert with the State of Maryland by providing constitutionally mandated medical care within the State's prison system under a government contract, pursuant to State-established protocols. These Defendants carried out core public safety and health functions on behalf of the State, making them subject to liability under the Maryland Declaration of Rights.

136.    The rights secured under Article 25 of the Maryland Declaration of Rights are independently actionable under Maryland law, and are not limited or barred by the standards of the federal Constitution. Even if the corresponding federal claims were to fail, the Maryland

43

Declaration of Rights permits recovery for grossly negligent or malicious violations of a prison inmate's state constitutional rights. *See DiPino v. Davis*, 354 Md. 18 (1999).

137.    As a direct and proximate result of the negligence committed by the above Defendants, Plaintiff, pursuant to Maryland Courts and Judicial Proceedings Annotated Code 3-904, sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, services, as well as past and future loss of earnings, economic capacity, and enjoyment of life and all damages awardable pursuant to common law and state law arising out of the death of Mr. Walker.

**WHEREFORE**, Plaintiff demands judgment against State of Maryland, Maryland Department of Public Safety and Correctional Services, CHS TX, Inc., d/b/a YesCare, YesCare MD, LLC, d/b/a YesCare, Hamid Kiabayan, Robert Dean, Geneva Holland, Keith D. Dickens, Sharon Baucom, Joseph Ezeh, Adaora Odunze, Olayinka Ukim, Kasahun Temesgen MD, FACP, Nicole Hargraves, Correct Rx Pharmacy Services, Inc., Wasiu Irekoya, Waheed Jimoh, Jaques Kemegne, Kevin Hight and Sabastine Offorji, RN, jointly and severally, for monetary damages in a sum that exceeds Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs, and all other relief deemed necessary and just under the circumstances.

## COUNT VII – Maryland State Declaration of Rights: Injunctive Relief
### (Plaintiff v. Defendants State of Maryland, Department of Public Safety and Correctional Services)

138.    Plaintiff realleges and incorporates by reference all of the facts and allegations of the paragraphs above as if fully set forth herein and further alleges:

139.    The Maryland Declaration of Rights guarantees individuals in State custody the right to be free from cruel and unusual punishment (Article 25) and the right to equal protection of the laws.

44

140.    As a prison inmate and person in state custody, Mr. Walker was entitled to humane treatment, including timely and adequate medical care, and to the equal protection of procedures designed to protect his health and safety while incarcerated.

141.    The acts and omissions of the State of Maryland and the Department of Public Safety and Correctional Services, including the failure to administer life-saving asthma medication, the refusal to escalate care despite repeated complaints, and the return of Mr. Walker to housing during a medical crisis, constituted violations of Article 25 of the Maryland Declaration of Rights.

142.    These violations were not isolated but stemmed from systemic deficiencies in medical oversight, staff training, and institutional responsiveness, amounting to unconstitutional conditions of confinement and deliberate indifference under Maryland law.

143.    Plaintiff seeks injunctive relief not solely on behalf of the deceased, but in a representative capacity as the personal representative of the Estate and as a matter of public interest to prevent future constitutional violations affecting similarly situated individuals. The pattern of systemic deficiencies in medical care, as evidenced by internal reviews, repeated lapses in asthma protocol adherence within the Jessup Facility, demonstrates an ongoing risk to other prison inmates with chronic respiratory conditions.

144.    Plaintiff seeks prospective injunctive relief requiring the Department of Public Safety and Correctional Services to implement constitutionally compliant asthma treatment protocols, staff training, and hospital escalation procedures—not to redress past injury, but to prevent future harm to a known class of medically vulnerable individuals.

**WHEREFORE**, Plaintiff requests judgment against the State of Maryland and the Department of Public Safety and Correctional Services for a declaration that Defendants' practices

and omissions violated Article 25 of the Maryland Declaration of Rights; an injunction requiring DPSCS to adopt and implement constitutionally compliant policies, procedures, and training protocols concerning the treatment of inmates with serious medical needs, including asthma; any other equitable relief deemed just and proper by this Court.

## COUNT VIII – Negligence (State Law)
### (Plaintiff v. Defendants CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves)

145.    Plaintiff realleges and incorporates by reference all of the facts and allegations of the paragraphs above as if fully set forth herein and further alleges:

146.    Defendants CHS TX, Inc., YesCare MD, LLC (*collectively*, "YesCare"), and their actual and/or apparent agents, servants and employees, including but not limited to Hamid Kiabayan, Defendant Offorji and Defendant Hargraves, were, at all times relevant, the operators, agents, employees or contractors of the infirmary at the Jessup Facility, a Maryland Department of Public Safety and Correctional Services facility hired to provide healthcare services to inmates in the custody of the Jessup Facility.

147.    At all times relevant hereto, YesCare, along with their actual and/or apparent agents, servants, and employees, held themselves out as healthcare providers specializing in the diagnosis and treatment of respiratory conditions, including asthma and other serious medical conditions requiring urgent care. They represented that they possessed the degree of skill, knowledge, and expertise ordinarily expected of medical professionals trained to recognize and respond to respiratory distress and life-threatening asthma exacerbations.

148.    YesCare, and their actual and/or apparent agents, servants and employees, had a duty to Mr. Walker to exercise that degree of skill, judgment, and care expected of reasonably competent medical practitioners practicing under the same or similar circumstances as those

involving Mr. Walker. This aforementioned duty includes taking the appropriate precautions to prevent unnecessary death to Mr. Walker, performing appropriate and timely medical procedures, informing Mr. Walker of their results, using appropriate medical expertise, performing appropriate diagnostic testing, and administering such other care as was necessary to treat Mr. Walker and avoid causing preventable injury to him.

149.    YesCare, along with their actual and/or apparent agents, servants, and employees, failed to adhere to the accepted standards of medical care necessary to properly and timely diagnose and treat Mr. Walker's respiratory distress and asthma exacerbation. Contrary to established medical protocols, Defendants failed to provide immediate and appropriate intervention, including the administration of necessary respiratory treatments, proper monitoring, and timely transfer to a higher level of care. As a result of Defendants' improper, negligent, and delayed treatment, Mr. Walker suffered severe and preventable injuries, and had Defendants adhered to the accepted standards of care, Mr. Walker would not have suffered such severe harm, including his ultimate death.

150.    YesCare' above-described acts and omissions were committed by their agents, servants, staff, employees, and/or administrators, including but not limited to Hamid Defendant Kiabayan, Defendant Offorji and Defendant Hargraves, who were acting within the course and scope of their agency, employment, and/or representation, and carrying out affairs for the benefit of YesCare. Accordingly, YesCare is vicariously liable for the negligent acts and omissions of their employees, staff, agents, and/or servants under the doctrine of *respondeat superior*.

151.    Throughout the course of Mr. Walker's negligent and improper treatment, as described above, YesCare, along with their actual and/or apparent agents, servants, and employees, negligently treated Mr. Walker through the following acts and omissions:

a. Failed to properly and timely assess and evaluate Mr. Walker's respiratory distress and asthma exacerbation;

b. Failed to properly and timely diagnose the severity of Mr. Walker's condition, including the life-threatening nature of his respiratory failure;

c. Failed to act as a reasonable and prudent healthcare provider would have acted under similar circumstances, including providing appropriate medical intervention, respiratory treatment, and timely escalation of care;

d. Failed to track or refill controller medications (Alvesco);

e. Disregarded Mr. Walker's prior sick calls and known history;

f. Not documented vital signs at intake or discharge; and

g. Returned a symptomatic patient to housing without reassessment;

152. As a direct and proximate result of the negligence of Defendants CHS TX, Inc. and YesCare MD, LLC, and their actual and/or apparent agents, servants, and employees, in failing to properly assess, diagnose, and treat Mr. Walker's respiratory distress and asthma exacerbation in a timely and appropriate manner, Mr. Walker suffered severe and substantial injuries, including preventable respiratory failure, prolonged suffering, and ultimately wrongful death.

153. Mr. Walker's injuries, losses, and damages are a result of YesCare's negligence, with no negligence on the part of the Mr. Walker contributing thereto.

**WHEREFORE**, Plaintiff demands judgment against Defendants CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves, jointly or severally, in a sum that exceeds Seventy-Five Thousand Dollars ($ 75,000.00), plus interests, costs and all other relief deemed necessary and just under the circumstances.

**COUNT IX – Wrongful Death (State Law)**
**(Plaintiff v. Defendants CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves)**

154.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

155.    This Count is also brought pursuant to the Maryland Wrongful Death Statute, MD. CODE, CTS. & JUD. PROC. § 3–904, by and on behalf of Mr. Walker's surviving family members, who have suffered pecuniary and nonpecuniary losses as a result of his preventable death.

156.    Defendants CHS TX, Inc., YesCare MD, LLC (*collectively*, "YesCare"), and their actual and/or apparent agents, servants and employees, including but not limited to Defendant Kiabayan, Defendant Offorji and Defendant Hargraves, were, at all times relevant, the operators, agents, employees or contractors of the infirmary at the Jessup Facility, a Maryland Department of Public Safety and Correctional Services facility hired to provide healthcare services to inmates in the custody of the Jessup Facility.

157.    At all times relevant hereto, YesCare, along with their actual and/or apparent agents, servants, and employees, held themselves out as healthcare providers specializing in the diagnosis and treatment of respiratory conditions, including asthma and other serious medical conditions requiring urgent care. They represented that they possessed the degree of skill, knowledge, and expertise ordinarily expected of medical professionals trained to recognize and respond to respiratory distress and life-threatening asthma exacerbations.

158.    YesCare, and their actual and/or apparent agents, servants and employees, had a duty to Mr. Walker to exercise that degree of skill, judgment, and care expected of reasonably competent medical practitioners practicing under the same or similar circumstances as those involving Mr. Walker. This aforementioned duty includes taking the appropriate precautions to

prevent unnecessary death to Mr. Walker, performing appropriate and timely medical procedures, informing Mr. Walker of their results, using appropriate medical expertise, performing appropriate diagnostic testing, and administering such other care as was necessary to treat Mr. Walker and avoid causing preventable injury to him.

159.    YesCare, along with their actual and/or apparent agents, servants, and employees, failed to adhere to the accepted standards of medical care necessary to properly and timely diagnose and treat Mr. Walker's respiratory distress and asthma exacerbation. Contrary to established medical protocols, Defendants failed to provide immediate and appropriate intervention, including the administration of necessary respiratory treatments, proper monitoring, and timely transfer to a higher level of care. As a result of Defendants' improper, negligent, and delayed treatment, Mr. Walker suffered severe and preventable injuries, and had Defendants adhered to the accepted standards of care, Mr. Walker would not have suffered such severe harm, including his ultimate death.

160.    As the principal for the physicians, nurses, and medical personnel who provided care to Mr. Walker, YesCare is responsible for all of the acts and/or omissions committed by its actual and/or apparent agents, servants, employees, and/or independent contractors within the course and scope of their actual and/or apparent agency and/or employment under the doctrine of vicarious liability and/or *respondeat superior*.

161.    Defendant Kiabayan Defendant Offorji, Defendant Hargraves and YesCare owed Mr. Walker a duty to adhere to the reasonable and accepted standards of medical care applicable to correctional healthcare providers, including the duty to properly assess and monitor his respiratory condition, respond to signs of deterioration, timely administer prescribed asthma medications, and escalate care appropriately to prevent foreseeable harm.

162.     Contrary to these duties, YesCare, through their agents and employees, failed to perform appropriate respiratory assessments, including but not limited to Defendant Offorji, failed to intervene in response to Mr. Walker's repeated complaints of respiratory distress, and negligently returned him to general housing without treatment or monitoring despite clear signs of a worsening asthma exacerbation. Their conduct fell well below the applicable standard of care and directly contributed to Mr. Walker's preventable respiratory arrest and death.

163.     Throughout the entire course of Defendants' negligent and improper treatment of Mr. Walker, Defendants breached their duties and fell below the standard of care through the following acts and omissions:

a.   Failure to timely recognize Mr. Walker's progressively deteriorating respiratory condition, including audible wheezing, labored breathing, and repeated reports of shortness of breath, all of which required immediate medical intervention;

b.   Failure to assess and monitor Mr. Walker's respiratory function, including failure to take and document vital signs, peak flow measurements, or oxygen saturation levels during multiple infirmary visits in the hours preceding his death;

c.   Failure to administer appropriate rescue medications such as Albuterol or corticosteroids, despite Mr. Walker's repeated complaints and requests for treatment for asthma-related symptoms;

d.   Failure to refer Mr. Walker to an outside hospital or initiate emergency escalation protocols when he presented with signs of acute respiratory distress, including difficulty speaking, visible distress, and a history of chronic asthma;

e.   Failure to provide continuous monitoring or housing in a medical observation unit despite known risks of respiratory arrest and the absence of any follow-up plan;

f.   Failure to accurately document Mr. Walker's condition and symptoms, including omissions or mischaracterizations in nursing triage notes and sick call records;

g.   Failure to implement or follow asthma chronic care protocols as required under applicable correctional healthcare standards and YesCare's own contractual obligations;

h.   Failure to maintain medication continuity, including failure to ensure timely refills and access to Mr. Walker's prescribed controller inhaler in the months preceding his death;

i.   Failure to respond to Mr. Walker's direct requests for treatment and hospital transfer on October 18, 2022, when he clearly communicated the urgent nature of his respiratory symptoms;

j.   Failure to appropriately supervise and train infirmary medical staff regarding the recognition and management of asthma emergencies and the escalation of care;

k.   Failure to reassess Mr. Walker's condition before returning him to general housing, where he collapsed and died less than 30 minutes later without any medical oversight; and

l.   Failure to act as reasonable and prudent healthcare providers under the same or similar circumstances, resulting in the preventable and wrongful death of Mr. Walker.

164.   As a direct and proximate result of Defendants' negligence and breaches of the applicable standards of care, which resulted in the wrongful death of Mr. Donta Walker, Plaintiff seeks all applicable damages pursuant to the Maryland Wrongful Death Statute, including but not limited to: severe mental anguish, grief, and emotional distress experienced by Mr. Walker's surviving family members; the physical pain and suffering Mr. Walker endured prior to his death;

loss of society, comfort, companionship, and guidance; and all other damages recoverable under Maryland law, including loss of economic support and funeral expenses.

**WHEREFORE**, Plaintiff requests judgment against Defendants CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves, jointly and severally, for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), or such greater amount as may be proven at trial, plus interest from the date of death, together with costs, expenses, and such further relief as this Court deems just and proper under the circumstances and applicable law.

### COUNT X – Survival Action (State Law)
**(Plaintiff v. Defendants CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves )**

165.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

166.    This Count is also brought pursuant to MD. CODE, EST. & TRUSTS § 7–401(y), on behalf of the Estate of Donta Walker for damages incurred during his lifetime, including physical pain, mental anguish, and medical costs, resulting from Defendants Sabastine Offorji, Nicole Hargraves, CHS TX, Inc., and YesCare MD, LLC's negligent acts and omissions.

167.    Defendants CHS TX, Inc., YesCare MD, LLC (*collectively*, "YesCare"), and their actual and/or apparent agents, servants and employees, including but not limited to Defendant Kiabayan, Defendant Offorji and Defendant Hargraves, were, at all times relevant, the operators, agents, employees or contractors of the infirmary at the Jessup Facility, a Maryland Department of Public Safety and Correctional Services facility hired to provide healthcare services to inmates in the custody of the Jessup Facility.

168.    At all times relevant hereto, YesCare, along with their actual and/or apparent agents, servants, and employees, held themselves out as healthcare providers specializing in the diagnosis and treatment of respiratory conditions, including asthma and other serious medical conditions requiring urgent care. They represented that they possessed the degree of skill, knowledge, and expertise ordinarily expected of medical professionals trained to recognize and respond to respiratory distress and life-threatening asthma exacerbations.

169.    YesCare, and their actual and/or apparent agents, servants and employees, had a duty to Mr. Walker to exercise that degree of skill, judgment, and care expected of reasonably competent medical practitioners practicing under the same or similar circumstances as those involving Mr. Walker. This aforementioned duty includes taking the appropriate precautions to prevent unnecessary death to Mr. Walker, performing appropriate and timely medical procedures, informing Mr. Walker of their results, using appropriate medical expertise, performing appropriate diagnostic testing, and administering such other care as was necessary to treat Mr. Walker and avoid causing preventable injury to him.

170.    YesCare, along with their actual and/or apparent agents, servants, and employees, failed to adhere to the accepted standards of medical care necessary to properly and timely diagnose and treat Mr. Walker's respiratory distress and asthma exacerbation. Contrary to established medical protocols, Defendants failed to provide immediate and appropriate intervention, including the administration of necessary respiratory treatments, proper monitoring, and timely transfer to a higher level of care. As a result of Defendants' improper, negligent, and delayed treatment, Mr. Walker suffered severe and preventable injuries, and had Defendants adhered to the accepted standards of care, Mr. Walker would not have suffered such severe harm, including his ultimate death.

171.    As the principal for the physicians, nurses, and medical personnel who provided care to Mr. Walker, YesCare is responsible for all of the acts and/or omissions committed by its actual and/or apparent agents, servants, employees, and/or independent contractors within the course and scope of their actual and/or apparent agency and/or employment under the doctrine of vicarious liability and/or *respondeat superior*.

172.    Defendant Kiabayan, Defendant Offorji, Defendant Hargraves and YesCare owed Mr. Walker a duty to adhere to the reasonable and accepted standards of medical care applicable to correctional healthcare providers, including the duty to properly assess and monitor his respiratory condition, respond to signs of deterioration, timely administer prescribed asthma medications, and escalate care appropriately to prevent foreseeable harm.

173.    Contrary to these duties, YesCare, through their agents and employees, failed to perform appropriate respiratory assessments, including but not limited to Defendant Offorji, failed to intervene in response to Mr. Walker's repeated complaints of respiratory distress, and negligently returned him to general housing without treatment or monitoring despite clear signs of a worsening asthma exacerbation. Their conduct fell well below the applicable standard of care and directly contributed to Mr. Walker's preventable respiratory arrest and death.

174.    Throughout the entire course of Defendants' negligent and improper treatment of Mr. Walker, Defendants breached their duties and fell below the standard of care through the following acts and omissions:

>  a.  Failure to timely recognize Mr. Walker's progressively deteriorating respiratory condition, including audible wheezing, labored breathing, and repeated reports of shortness of breath, all of which required immediate medical intervention;

b.  Failure to assess and monitor Mr. Walker's respiratory function, including failure to take and document vital signs, peak flow measurements, or oxygen saturation levels during multiple infirmary visits in the hours preceding his death;

c.  Failure to administer appropriate rescue medications such as Albuterol or corticosteroids, despite Mr. Walker's repeated complaints and requests for treatment for asthma-related symptoms;

d.  Failure to refer Mr. Walker to an outside hospital or initiate emergency escalation protocols when he presented with signs of acute respiratory distress, including difficulty speaking, visible distress, and a history of chronic asthma;

e.  Failure to provide continuous monitoring or housing in a medical observation unit despite known risks of respiratory arrest and the absence of any follow-up plan;

f.  Failure to accurately document Mr. Walker's condition and symptoms, including omissions or mischaracterizations in nursing triage notes and sick call records;

g.  Failure to implement or follow asthma chronic care protocols as required under applicable correctional healthcare standards and YesCare's own contractual obligations;

h.  Failure to maintain medication continuity, including failure to ensure timely refills and access to Mr. Walker's prescribed controller inhaler in the months preceding his death;

i.  Failure to respond to Mr. Walker's direct requests for treatment and hospital transfer on October 18, 2022, when he clearly communicated the urgent nature of his respiratory symptoms;

j.   Failure to appropriately supervise and train infirmary medical staff regarding the recognition and management of asthma emergencies and the escalation of care;

k.   Failure to reassess Mr. Walker's condition before returning him to general housing, where he collapsed and died less than 30 minutes later without any medical oversight; and

l.   Failure to act as reasonable and prudent healthcare providers under the same or similar circumstances, resulting in the preventable and wrongful death of Mr. Walker.

175.   As a direct and proximate result of Defendants' negligence and breaches of the applicable standards of care, which resulted in the wrongful death of Mr. Donta Walker, Plaintiff seeks all applicable damages pursuant to the Maryland Wrongful Death Statute, including but not limited to: severe mental anguish, grief, and emotional distress experienced by Mr. Walker's surviving family members; the physical pain and suffering Mr. Walker endured prior to his death; loss of society, comfort, companionship, and guidance; and all other damages recoverable under Maryland law, including loss of economic support and funeral expenses.

176.   Defendants Hamid Kiabayan, Sabastine Offorji, Nicole Hargraves, CHS TX, Inc., and YesCare MD, LLC are liable to the The Estate of Donta Walker for such damages as would have been recoverable by Decedent, Mr. Walker, had he survived, including but not limited to conscious pain and suffering, loss of dignity, emotional distress, medical expenses, funeral expenses, and all damages awardable pursuant to common law and applicable Maryland law.

**WHEREFORE**, Plaintiff requests judgment from and against Defendants CHS TX, Inc., YesCare MD, LLC, Hamid Kiabayan, Sabastine Offorji, and Nicole Hargraves , jointly or severally, for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) or such greater amount as may be warranted by the evidence at trial, plus interest from the date of injury, together

with all costs, expenses, attorney's fees, and such further relief as may be recoverable under applicable law.

Respectfully submitted,

**PRICE BENOWITZ, LLP**

By:     _/s/ Arren T. Waldrep_____
Arren T. Waldrep, Esq. (Bar #14924)
409 7th Street, N.W., Suite 200
Washington, D.C. 20004
Phone: (202) 417-6000
Facsimile: (301) 244-6659
Arren@pricebenowitzlaw.com
_Attorneys for Plaintiff_

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

By:     _/s/ Arren T. Waldrep_
Arren T. Waldrep, Esq.

## RULE 1-313 CERTIFICATE

I certify that I am admitted to the practice of law in the State of Maryland, that my Maryland bar status is current and active, and that my District of Columbia office is located at the address listed above.

Date:  07/16/2025_____    By:     _/s/ Arren T. Waldrep_____
                                                     Arren T. Waldrep, Esq.